[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12192
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-00203-WS-CAS

KENDRA M. CHUKES,

Plaintiff - Appellant,

versus

SAILORMEN INC.,
d.b.a., Popeyes Chicken & Biscuits,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 15, 2016)

Before WILLIAM PRYOR, JILL PRYOR and FAY, Circuit Judges.

PER CURIAM:

Kendra Chukes appeals the district court's order granting summary judgment on her Title VII sex discrimination and retaliation claims and related state-law claims in favor of her former employer, defendant Sailormen, Inc. ("Sailormen").[1]  After careful review, we affirm.

I.

Sailormen, a franchisee of Popeye's restaurants in Florida, hired Chukes as an assistant manager in July 2012.[2]  After a training period, in September of 2012 Chukes was assigned to a Tallahassee store under the direct supervision of Area Manager Terrell Watson.  Prior to Chukes's employment at the Tallahassee store, the store experienced no significant problems with cash shortages from its safe. But in the weeks after Chukes began working there, the safe was short on cash at least three times when Chukes was one of the managers on duty.  On one occasion, Chukes and another assistant manager, James Nealy, discovered a shortage of $120.  Nealy reported the shortage to Watson, who said that Nealy would be responsible for making up the shortage.  Although Nealy denied taking the money, he replaced it from his own funds the following week.  When he arrived at the

---

[1] Chukes sought relief pursuant to Title VII and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.10.  As the district court noted, the standards applicable to FCRA are identical to those of Title VII.  *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010).  Thus, we do not independently address Chukes's state law claims because they rise and fall with her federal claims.

[2] Because we write for the parties, we assume their familiarity with the underlying facts and recite only what is necessary to resolve this appeal.

2

store to replace the money, Chukes was the manager on duty.  Nealy gave Chukes the money.  Two hours later, Chukes called Nealy to ask whether he had the $120 because it had gone missing from the safe.

On a second occasion, the safe again was short on cash while Chukes was working.  LaShana Harris, a Crew Leader who also was on duty at the time, was told she was responsible for replacing the money from her own funds.  On a third occasion, Chukes reported a cash shortage to Watson, who then reported the shortage to his supervisor, Mike McCaskey.  McCaskey suspected that Chukes was responsible for the shortage, and possibly for earlier shortages; on October 26, 2012 he advised Watson to suspend Chukes without pay pending an investigation into the missing funds.  McCaskey questioned Chukes about the missing cash, and she denied responsibility.  McCaskey testified that he had intended to convert the suspension into a termination if his investigation confirmed his suspicion about Chukes.

On October, 27, 2012, the day after her suspension began, Chukes sent an email to McCaskey stating, among other things, that "Dishuana Robinson[, an employee at another store,] was illegally fired after she rejected sexual advances by Terrell Watson. . . .  I am letting you know that my suspension is wrong and

3

retaliatory after I reported illegal activities within [my] store, and the hostile environment at [Robinson's] store." Chukes Deposition, Doc. 31-4, Ex. 10.[3]

During the course of his investigation, McCaskey questioned three employees, including Nealy and Harris, each of whom reported his belief that Chukes was taking money from the safe. On November 2, 2012, McCaskey prepared Chukes's termination paperwork and informed Watson of his decision to fire Chukes. Chukes was not informed of her termination until November 13, 2012. In the interim period between the termination decision and her notification, Chukes filed an administrative Charge of Discrimination, in which she alleged sex discrimination and retaliation. McCaskey testified that he was unaware of the Charge of Discrimination until after November 13. When asked during a deposition why she believed she was terminated, Chukes responded, "I believe because of the missing money." Chukes Deposition, Doc. 31-4 at 45.

The district court applied the *McDonnell Douglas*[4] burden shifting analysis and granted summary judgment in favor of Sailormen. The court assumed that Chukes presented a prima facie case of sex discrimination and retaliation, but found that Sailormen had articulated a nondiscriminatory reason for Chukes's suspension and termination, that is, mishandling company funds. The court further determined that Chukes failed to meet her burden to establish that the proffered

---

[3] "Doc." refers to the entry on the district court's docket in this case.
[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

reason was mere pretext.  Moreover, as to her retaliation claim, the district court alternatively concluded that Chukes failed to demonstrate that her suspension and termination were causally connected to any statutorily protected speech (her email to McCaskey and her Charge of Discrimination).  This is Chukes's appeal.

## II.

We review an order granting summary judgment *de novo*, applying the same standard the district court employed.  *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  We view all evidence and draw all inferences in the light most favorable to the nonmovant, here, Chukes.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case.  An issue of fact is 'genuine' if the record taken as a whole cold lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 745 F.3d 1288, 1298 (11th Cir. 2014).

## III.

Upon a *de novo* review, we find no error in the district court's well-reasoned order entered on April 16, 2015.  Chukes contends that the district court erred in concluding that Nealy was not an appropriate comparator just because he had

longer tenure at the company and agreed to repay the money that he discovered to be missing during his shift.  But the district court's analysis was more robust than this:  it also considered that money was only found missing *once* during Nealy's lengthy employment at the store and was found missing at least *three times* during Chukes's very short employment.  *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.").  The district court did not err in its determination that Nealy was an inappropriate comparator.

Chukes also asserts that she established a genuine issue of material fact regarding a causal connection between her suspension and termination and her statutorily protected speech.  In support, she points to the fact that she filed a Charge of Discrimination before she received notice of her termination.   But Chukes does not dispute that had McCaskey completed her termination paperwork and notified her supervisor, Watson, before she filed her Charge.  And although Chukes argues that McCaskey could have back-dated the paperwork as a cover-up, McCaskey testified that the date on the paperwork was automatically populated by the computer program and that he was incapable of back-dating.  Chukes's argument to the contrary constitutes mere speculation, which is insufficient to withstand a motion for summary judgment.  *See Cordoba v. Dillard's, Inc.*, 419

6

F.3d 1169, 1181 (11th Cir. 2005) ("[U]nsupported speculation does not meet a party's burden of producing some defense to a summary judgment motion." (alteration and internal quotation marks omitted)).

Chukes points to the fact that she engaged in protected speech in her email to McCaskey on October 27, before she was terminated, and argues that her termination was in retaliation for that email. But she does not offer any evidence to contradict McCaskey's testimony that he had previously decided that the suspension was to become a termination pending the outcome of the investigation. An employer's decision to "proceed[] along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark Cty. Sch. Dist. V. Breeden*, 532 U.S. 268, 272 (2001).

Finally, Chukes asserts that McCaskey's investigation was not just "flawed," as the district court assumed *arguendo* for its analysis, but that it was based on reports of employees who had an incentive to lie. This argument also misses the mark. The issue is not whether individuals providing information in an investigation had an incentive to lie, but whether the decisionmaker himself harbored ill intent or, conversely, merely may have conducted a flawed investigation. *See Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999). The district court correctly determined that, even if McCaskey's

7

investigation was flawed, Chukes offered no evidence that his investigation was a pretext for discrimination.

Accordingly, for the reasons stated in the district court's order, we affirm the grant of summary judgment in favor of Sailormen.

**AFFIRMED.**