[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17199
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-00087-KD-N

AED EL-SABA,

Plaintiff - Appellant,

versus

UNIVERSITY OF SOUTH ALABAMA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(June 13, 2018)

Before TJOFLAT, JILL PRYOR and NEWSOM, Circuit Judges.

PER CURIAM:

Aed El-Saba appeals from the district court's denial of his motion to compel discovery and grant of summary judgment in favor of his former employer, the University of South Alabama, in his employment discrimination and retaliation suit. After careful review, we affirm.

## I.    BACKGROUND

El-Saba, an American citizen born in Lebanon, was employed as a professor in the Electrical and Computer Engineering ("ECE") Department at the University of South Alabama beginning in 1999.[1] He was terminated in 2013 after his request for an extension of leave was denied.

El-Saba's career at the University was successful: he was hired to a tenure-track position, received pay raises each time raises were awarded to professors, and was awarded tenure and promoted to associate professor in 2005. His supervisor was Dr. John Steadman, Dean of the University's Engineering Department (of which the ECE Department was a part), and it was Steadman who, beginning in 2003, approved El-Saba's raises and recommended him for tenure and promotion. El-Saba, however, believed that the Department was not treating foreign-born faculty equally to their American-born counterparts. In the spring of 2007, he made a chart showing the salaries of professors in his Department for the years 2003-2007. He showed the chart to Dr. Mohammed Alam, the ECE Department

---

[1] Because we write for the parties, we assume their familiarity with the underlying facts and recite only what is necessary to resolve this appeal.

Chair, and also presented the chart at a May 2007 faculty meeting.  At the meeting, at which Alam was present, El-Saba distributed the chart and alleged that the Department's raises were racist because native-born, native-English-speaking professors received greater raises than foreign-born professors.[2]

Steadman was not present at the meeting when El-Saba distributed the chart and made allegations about racism in the Department.  Nor did El-Saba ever speak directly to Steadman about his salary, any apparent discrepancies, or discrimination he believed existed.  After the meeting, however, Alam showed the chart to Steadman and told him about El-Saba's assertion that the Department's salaries were discriminatory.

Later that year, Steadman attended at least two faculty meetings relevant to this appeal.  At one, a faculty member raised concern about the pay discrepancies discussed at the May meeting; Steadman responded by explaining that he strictly followed the University's rules in recommending salary increases.[3]  At another, Steadman allegedly said that he wanted to change the demographics of the Engineering Department and that he preferred native-born, natural English-

---

[2] As the district court explained in its summary judgment order, at least some of the discrepancies in salary accounted for differences in hire dates and faculty responsibilities.

[3] El-Saba does not argue that the University's salary rules were discriminatory in intent or effect.

speakers.[4] El-Saba responded by accusing Steadman of discrimination and racism at ECE department meetings and faculty search committee meetings in 2008. Steadman was not at these meetings but was nonetheless aware of some of El-Saba's complaints.

El-Saba asserted that other incidents transpired over the following semesters evidencing Steadman's discriminatory animus. El-Saba requested a medical leave of absence for the entire fall semester of 2008 to have several dental surgeries, but, after meeting with Steadman, Alam, and other representatives from the University's human resources department, was granted only a limited leave from August 29 through October 21. In 2010, El-Saba was the sole nominee of the Engineering Department's Excellence in Research Award, but the award committee—of which Steadman was not a member or influencer—declined to give the award to any faculty member. El-Saba believed that Steadman was responsible for cancellation of the award and said as much in an April faculty meeting; Steadman replied that the committee decided there would be no award that year because the quality of the research was not of a level warranting recognition. El-Saba accused Steadman of cancelling the award to punish him for his previous complaints. El-Saba left the meeting, but Steadman stayed and told Alam, also

---

[4] Steadman testified that he did not recall making these comments. For purposes of reviewing the district court's summary judgment order, we accept El-Saba's testimony that Steadman made the comments. *See infra* Part II.

4

present at the meeting, that it seemed like El-Saba was unhappy at the University and that he hoped El-Saba would find a position elsewhere and leave. El-Saba testified that Alam told him Steadman said, "I'll make it so tough on [El-Saba], he'll have to resign." Doc. 66-1 at 102.

During the fall semester of 2011, El-Saba gave an interview to an EEOC investigator concerning a claim filed by a colleague against the University. In the interview, El-Saba accused Steadman of racism based on, among other things, Steadman's statements about a desire to change the Department's demographics and about preferring native-born, natural-English speaking faculty and alleged salary and raise discrepancies in the ECE Department. Also in the fall of 2011, El-Saba met with Dr. Russ Lea, the Vice President of Research at the University, to discuss the issues he had with Steadman. In early 2012, he met with the University's general counsel, Jean Tucker, concerning Steadman's aforementioned statements and his purported cancellation of the research award. El-Saba offered no evidence that Steadman knew about any of these meetings or what was said during them.

El-Saba was on leave for most of his final two years at the University. After meeting with Alam, Steadman, and the University's human resources department, El-Saba was granted family medical leave for Fridays during the fall 2011 semester to take his wife to chemotherapy treatments. His course load and salary

was adjusted based on his leave.  Due to his wife's ongoing medical issues and his own medical problems (he had suffered a heart attack), El-Saba requested a one year leave of absence spanning the fall 2012 and spring 2013 semesters.  Steadman recommended approval of the request, and it was granted by Dr. David Johnson, Senior Vice President for Academic Affairs.

El-Saba suffered another heart attack in July 2013 while overseas.  He sent an email to Alam notifying him of the heart attack, explaining that his doctor had recommended open-heart surgery, and requesting an additional one-year unpaid medical leave of absence.[5]  Alam recommended that the leave request be granted and turned the request over to Steadman.  Steadman sent an email to El-Saba in which he stated that, due to staffing needs, he could not approve a leave of absence as lengthy as the one El-Saba had requested.  Steadman asked El-Saba to let him know by August 5 whether or not he would be available for work on August 15, the beginning of the fall semester.

On August 5, El-Saba emailed Steadman and stated that he would be unable to return to the University until after November 11.  Steadman was away from the office from August 3 through 13, so Johnson responded to El-Saba's email. Johnson told El-Saba that, due to staffing needs, the University could not grant his

---

[5] As the district court explained, it is undisputed that by the time El-Saba sent the email, he had been treated via an alternative procedure, released from the hospital, and was no longer under recommendation for open-heart surgery.  *See* Doc. 96 at 16 & n.5.

6

request for a one year leave of absence.  Johnson further stated that, for the University to consider granting El-Saba a leave of absence for the fall 2013 semester only, El-Saba would need to provide a statement from his physician by August 12 stating that he would be able to return to work on January 2, 2014.

On August 13, El-Saba sent Johnson an email to which he attached a "Sick Leave Certificate" stating that he was "fit to work from 01-01-2014."  Doc. 66-1 at 283.  The email also stated that a more detailed report would follow.  On August 15, El-Saba emailed Johnson a more detailed medical report.  The report, dated August 14, detailed El-Saba's treatment and stated that he was "fit to resume his routine work."  Doc. 66-1 at 292.  Johnson reviewed the documentation and consulted with Steadman on more than one occasion about El-Saba's request. Johnson and Steadman's review resulted in the decision that El-Saba's leave request was medically unnecessary.  Johnson had no knowledge that El-Saba had accused Steadman of discrimination.

On August 20, Steadman replied to El-Saba's August 15 email and stated that because El-Saba was fit to work and was not under travel restrictions, a leave of absence was unnecessary and therefore unreasonable.  Steadman further stated that because leave had not been granted and El-Saba did not return to work as

required on August 15, he was deemed to have resigned his position at the University.[6]

El-Saba filed a complaint with the Equal Employment Opportunity Commission alleging that he was terminated due to illegal discrimination and retaliation.  After receiving notice of a right to sue from the EEOC, he filed a complaint in district court alleging that the University terminated his employment based on his national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and in retaliation for his ongoing complaints against Steadman.

The parties conducted extensive discovery.  Approximately two weeks after the close of discovery, El-Saba filed a motion to compel in which he sought production of certain of the University's attorney notes and emails; a reopening of discovery as to Steadman, Johnson, and in-house University counsel; disqualification of defense counsel; and a reopening of Alam's deposition.  A magistrate judge denied the motion, finding that it was untimely and that—because El-Saba never moved for an extension of the discovery deadline before the close of discovery, waited until very late in the discovery period to take contentious

---

[6] It is undisputed that, since Steadman's appointment as Dean, Steadman recommended and El-Saba was granted more leave of absence time than any other College of Engineering faculty member had ever been given.  Moreover, the record contains no evidence that any other faculty member failed to return to or be available for work on the faculty reporting date without preapproval.

depositions, and waited almost two weeks after the close of discovery to file the motion to compel—he had not shown diligence justifying the filing of his out of time motion.  The magistrate judge acknowledged that scheduling orders may be modified for good cause, but, for these same reasons, found no such cause.

As an alternative ground for denying the motion, the magistrate judge explained that El-Saba's motion failed to include a certification that he had conferred in good faith with the University in an attempt to resolve the dispute without court action as required by Rule 37 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 37(a)(1) (requiring a party moving for an order compelling discovery to certify that he "has in good faith conferred or attempted to confer" with the opposing party "without court action").  The magistrate judge also denied El-Saba's motion for reconsideration.  Finding no error in the magistrate judge's orders, the district court affirmed the denial of El-Saba's motion to compel.

Upon the University's motion, the district court granted summary judgment in favor of the University.[7]  As to El-Saba's discrimination claim, the district court acknowledged the evidence in the record that Steadman wanted to hire more native-born applicants.  Nonetheless, the court concluded that El-Saba's claim failed because it was undisputed that Johnson was the ultimate decisionmaker as to

_____

[7] The district court preliminarily made several evidentiary rulings, two of which El-Saba challenges on appeal.  We need not determine whether these evidentiary rulings were in error because, even considering the challenged evidence, we conclude that El-Saba has not shown that there is a genuine issue of material fact as to his discrimination and retaliation claims.

El-Saba's termination and because El-Saba failed to present evidence that Johnson had any discriminatory intent or that his decision was impacted by Steadman's alleged discriminatory animus. In the alternative, the district court concluded that the University had proffered a legitimate, nondiscriminatory reason for El-Saba's termination—that El-Saba failed to report to work despite his medical leave request being denied as medically unnecessary—and El-Saba failed to show that this reason was pretextual.

As to El-Saba's retaliation claim, the district court applied the *McDonnell Douglas* burden shifting framework.[8] The court assumed that El-Saba had engaged in protected activity and determined that his termination constituted an adverse employment action. But, the court concluded, he failed to show that but for his participation in the protected activities, he would not have been terminated because the alleged protected activities known to Steadman were too remote in time to establish the causation of his termination and, in any event, Johnson was the ultimate decisionmaker. Alternatively, the district court—relying on its previous findings—concluded that El-Saba failed to rebut the University's proffered legitimate, nondiscriminatory reason for his termination.

This is El-Saba's appeal.

## II.    STANDARDS OF REVIEW

---

[8] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *infra* Part III.B.

10

We review for an abuse of discretion a district court's denial of a motion to compel discovery. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006). "This means that a district court is allowed a range of choice in such matters, and we will not second-guess the district court's actions unless they reflect a clear error of judgment." *Id.* (internal quotation marks omitted). We have "often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011).

We review an order granting summary judgment *de novo*, applying the same standard the district court employed. *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view all evidence and draw all inferences in the light most favorable to the nonmovant, here, El-Saba. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks omitted).

11

### III.    DISCUSSION

**A. Motion to Compel**

El-Saba contends that the district court abused its discretion in denying his motion to compel.  Although he acknowledges that his motion was untimely, he argues that the magistrate judge and district court failed to obtain "any factual input" from him before denying the motion.  Appellant's Br. at 39.  He also argues that the magistrate judge erroneously treated the motion to compel as only requesting an extension of the dispositive motions deadline, rather than as requesting an extension of the discovery deadline.  Moreover, El-Saba asserts that his failure to attach a certification regarding conferral with opposing counsel was an insufficient reason to deny his motion to compel.

The district court was well within its discretion to deny El-Saba's motion to compel as untimely based on the magistrate judge's reasoned order.  By El-Saba's own admission, the motion was filed almost two weeks after the close of discovery and therefore was untimely.  As the magistrate judge noted, El-Saba gave no reasonable excuse why he did not move to extend the discovery deadline earlier.  As to El-Saba's first argument, the magistrate judge had before her El-Saba's motion and had entertained discovery disputes between the parties previously; therefore, it cannot be said that El-Saba's "factual input" was not considered.  Furthermore, although the magistrate judge noted that El-Saba had not technically

12

moved for an extension of discovery, the order denying the motion to compel does not rest on this technicality; rather, the magistrate judge expressly acknowledged that El-Saba wished to extend discovery beyond the deadline.  Finally, the court was within its discretion to consider El-Saba's failure to certify that he had conferred with opposing counsel; El-Saba had run afoul of Rule 37's requirement that the parties make a good faith effort to resolve any discovery disputes without court intervention.  *See Holloman*, 443 F.3d at 843-44 (finding no abuse of discretion when district court denied discovery motions "based on what it termed a failure to work with the defendants in good faith").[9]

## B. Summary Judgment

El-Saba argues that the district court erred in granting summary judgment in favor of the University on both of his claims.  Specifically, he argues that the district court erred in concluding that Johnson was the ultimate decisionmaker as to his termination and that he failed to demonstrate pretext.

We are unpersuaded that the district court committed reversible error.  The district court correctly determined that El-Saba failed to show that the University's proffered legitimate nondiscriminatory reason for his termination was pretext.

---

[9] El-Saba relatedly contends that the magistrate judge should have granted his motion for reconsideration, arguing that the denial of his motion to compel in light of alleged discovery abuses by the University worked a manifest injustice.  We cannot agree.  Discovery undoubtedly was contentious in this case; however, upon a review of the record we see none of the University's actions as abusive such that manifest injustice would have resulted from the denial of El-Saba's motion to compel.

This conclusion defeats his retaliation claim as a matter of law.  A demonstration of pretext is not in all cases necessary to show discrimination; however, given the University's proffered reason for El-Saba's termination and that El-Saba failed to present evidence of pretext, he cannot show that a reasonable jury could conclude he was terminated because of his national origin.  Thus, we need not address whether the district court correctly determined that Johnson was the sole decisionmaker in El-Saba's termination.

Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin."  42 U.S.C. § 2000e-2(a)(1).  It is also unlawful under the statute to retaliate against an employee because he has opposed "an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Id.* § 2000e-3(a).  A plaintiff may overcome a motion for summary judgment on his Title VII claims by satisfying the *McDonnell Douglas* burden-shifting framework.  *See EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272-73 (11th Cir. 2002).  Under that framework, the plaintiff must establish a prima facie case of discrimination or retaliation, at which point the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse employment action.

14

*Id.* If the employer meets its burden, the burden once again shifts to the plaintiff to show that the employer's proffered reason was pretextual. *Id.* We have said, however, that a plaintiff need not establish each of the *McDonnell Douglas* elements to survive summary judgment; rather, he may do so where he presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation marks omitted).

The University offered ample evidence that the decision to terminate El-Saba was made because he failed to return to work after his medical leave request, which was unsupported by evidence of medical need, was denied.[10] The district court concluded that El-Saba failed to show that this proffered legitimate, nondiscriminatory reason was pretextual, and we agree. El-Saba argues that his numerous complaints about Steadman's allegedly discriminatory animus were the real reason for his termination. But the last documented complaint El-Saba made about Steadman—to the University's general counsel—was in early 2012,

---

[10] We are unconvinced by El-Saba's argument that the district court erred in looking solely to the August 14 medical report. Our review of the email correspondence between El-Saba, Johnson, and Steadman clearly demonstrates that this report, which did not directly conflict with the one sent on August 13 stating that El-Saba was "fit to work from 01-01-2014," was intended to be the more thorough, final report from El-Saba's doctor. In any event, even if Steadman and Johnson misinterpreted the two medical reports, their mistake—without other evidence of discrimination—does not amount to pretext. *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) ("[An employer is] free to fire [its] employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." (internal quotation marks omitted)).

15

approximately a year and a half before his final leave request was denied and his employment terminated.  Even assuming Steadman (and/or Johnson) knew of this complaint—an assumption that lacks evidentiary support—this complaint, and the others before it, were simply too remote to bear any temporal relationship to El-Saba's termination.[11]  *See, e.g.*, *Maniccia v. Brown*, 171 F.3d 1364, 1369-70 (11th Cir. 1999) (explaining that gaps of 15 and 21 months between protected activity and adverse employment actions showed "no temporal relationship" between the two).  Given the temporal distance between his complaints and termination, without more, no rational trier of fact would conclude that the complaints were the real reason for his termination.  *Harrison*, 746 F.3d at 1298; *see also Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law.").  Thus, under the undisputed facts of this case El-Saba has failed to demonstrate the existence of a genuine issue of material fact regarding whether the University's well-documented, stated reason for his termination was pretext for discriminatory animus or retaliation.  *Harrison*, 746 F.3d at 1298.

[11] El-Saba argues that because he was away on leave for most of the time between his statements to the University's general counsel in early 2012 and his request for a year-long leave in August 2013, the August 2013 leave request presented Steadman with his first opportunity to unlawfully terminate him.  The record does not support El-Saba's position.  After his early 2012 statements, El-Saba requested a one year leave of absence beginning in fall 2012, and it was Steadman's job to review the request.  Rather than terminating him then, Steadman recommended approving El-Saba's leave request (a recommendation Johnson accepted).

Although a plaintiff alleging discrimination is not required to conform to the *McDonnell Douglas* framework to overcome a motion for summary judgment,[12] here El-Saba's failure to rebut the University's asserted legitimate, nondiscriminatory reason for his termination is fatal to his "convincing mosaic" theory. In light of the University's unrebutted legitimate reason for El-Saba's dismissal, no reasonable jury would find that he was terminated due to intentional discrimination. *Smith*, 644 F.3d at 1328.

In sum, the district court was correct to grant summary judgment in favor of the University.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's denial of El-Saba's motion to compel discovery and grant of the University's motion for summary judgment.

**AFFIRMED.**

---

[12] El-Saba did not argue before the district court, nor does he argue now, that he can satisfy the *McDonnell Douglas* burden-shifting framework as to his discrimination claim. *See McDonnell Douglas*, 411 U.S. at 792. Thus, we need consider only whether he can satisfy the "convincing mosaic" theory. *See Smith*, 644 F.3d at 1328 (explaining both ways to withstand a motion for summary judgment).

17