[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 19-14870

Non-Argument Calendar

————————————

MINNIE MCCALL,

Plaintiff-Appellant,

*versus*

MONTGOMERY HOUSING AUTHORITY,
a public corporation,
EVETTE HESTER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:14-cv-01113-ECM-SMD

_____

Before NEWSOM, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Minnie McCall appeals the denial of her motion for discovery sanctions and the summary judgment for the defendants on her Fair Housing Act claims. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

McCall participated in the Montgomery Housing Authority's section 8 program. The program allowed participants to choose an apartment and then assisted them with rent payments. In 2009, McCall and eight other co-plaintiffs sued the Montgomery Housing Authority for violating their due process rights, eventually settling. In August 2012—still in the section 8 program—McCall moved into the independently owned Bristol Downs apartment complex.

Federal regulations governing section 8 programs mandate that all housing comply with minimum safety requirements and therefore require public housing agencies—like the Housing Authority—to inspect apartments before move-in. *See* 24 C.F.R.

§§ 982.401, 982.405(a). The Housing Authority contracted with an independent third-party company to perform the inspections.

When McCall moved in, her apartment had a backflowing septic system and an insect infestation. She wrote a letter to the Housing Authority requesting that her unit be reinspected because of the problems. Two days later, the Housing Authority asked the third-party company to perform another inspection. A few days after that, the company reinspected McCall's apartment without giving her notice. It did so because McCall's complaints about standing water and insect infestation constituted an emergency for which notice wasn't required. McCall orally discussed "porting out"—moving to another apartment—with Housing Authority staff, but ultimately never submitted the required written request.

More than a year later, the third-party company reinspected the apartment and found that it didn't meet the required safety standards because of "a variety of issues that were the responsibility of the tenant." McCall testified that the inspector was verbally abusive and spoke with "racial undertones." For example, McCall said that the inspector falsely found that the stove was greasy because "she seem[ed] to think the only thin[g] that [McCall] d[id] [wa]s fry chicken and eat collard greens." The inspector also "nodded in agreement" when a Bristol Downs maintenance worker said that a nearby tenant was "[a] young black guy. Won't work. Just tearing up the place."

After the failed inspection, the Housing Authority tried to meet with McCall three times, each time advising that if she failed

to attend the meeting, it might terminate her housing choice voucher. Even though McCall did not attend any of the meetings, her voucher was not terminated and her apartment eventually passed reinspection. McCall moved out of Bristol Downs two years later.

McCall sued the Housing Authority and its executive director for racial discrimination and retaliation under the Fair Housing Act.[1] She alleged that her mistreatment stemmed from her participation in the 2009 lawsuit against the Housing Authority, and that the Housing Authority had retaliated by inspecting her apartment in a discriminatory manner, entered her apartment without notice, and that the executive director had failed to intervene in these violations. She also said that she was prevented from filing an internal complaint and "port[ing] out" into safe housing.

After eight months of discovery, during which McCall never moved to compel production of documents, the Housing Authority and its executive director moved for summary judgment. They argued that there was no evidence that McCall was mistreated because of her race. And, they continued, she hadn't produced any evidence of a comparator who was treated better than she was. As to her retaliation claim, they argued that McCall could not establish

---

[1] McCall also sued other defendants for negligence and civil conspiracy and for violating the Americans with Disabilities Act and her procedural due process rights, but the claims against the other defendants were dismissed from the case and McCall doesn't appeal the dismissal.

a prima facie case because there was no evidence that the relevant decisionmaker—the executive director—was ever aware of McCall's complaints about her housing.

In response, McCall asked the court to deny the motion— and separately moved for sanctions—because the defendants had not complied with her requests for documents from her tenant file. McCall said that her tenant file was missing "perhaps well over one hundred documents" it was required to have by law. The defendants replied with an affidavit that they did not have any other documents in her tenant file.

The magistrate judge denied the motion for sanctions because McCall neither moved to compel nor identified the documents she sought and she didn't describe how the documents would have helped her case. The magistrate judge also recommended that the motion for summary judgment be granted as to the disparate treatment claim because McCall hadn't submitted any evidence that the treatment she experienced was motivated by race and because she hadn't identified a comparator who was treated more favorably than she was. Finally, the magistrate judge recommended granting the motion as to McCall's retaliation claim because McCall hadn't suffered an adverse action.

McCall objected to the magistrate judge's recommendation and renewed her arguments that the defendants were concealing crucial documents in her tenant file. She also moved for a hearing on her sanctions motion. The district court agreed with the

magistrate judge, overruled McCall's objections, and entered summary judgment for the Housing Authority and its executive director.

## STANDARD OF REVIEW

We review de novo the district court's summary judgment, viewing the evidence and all factual inferences in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). We review the district court's discovery rulings for an abuse of discretion. *Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014). We will not overturn a discovery ruling unless it resulted in "substantial harm to the appellant's case." *Id.*

## DISCUSSION

McCall makes two arguments on appeal. First, she contends that the district court erred in denying her motion for sanctions and for doing so without a hearing. Second, she argues that the district court erred in granting summary judgment for the Housing Authority. We disagree.

First, the district court correctly overruled McCall's objections to the magistrate judge's denial of McCall's motion for sanctions. The federal rules of civil procedure allow a litigant to move to compel discovery. Fed. R. Civ. P. 37(a)(3)(A) ("If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions."). If the district court grants a motion to compel and orders a litigant to

comply, and he refuses, then the district court may enter sanctions for violating a court order. *Id.* R. 37(b) ("If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders."). Other than initial disclosures—which are required without a request from the opposing party, *see id.* R. 26(a)(1)—"[w]e consistently have found [r]ule 37 sanctions . . . to be appropriate, however, only 'where the party's conduct amounts to flagrant disregard . . . *of discovery orders.*'" *United States v. Certain Real Property Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997) (quoting *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)).

Here, McCall never moved to compel the Housing Authority to turn over the documents from her tenant file, so the district court never entered—and thus the defendants never violated—an order requiring the defendants to provide the requested documents. And nothing in rule 37 entitles a litigant to an oral hearing. *See* Fed. R. Civ. P. 37. The district court therefore did not abuse its discretion in overruling McCall's objections.

Second, the district court properly entered summary judgment for the Housing Authority and its executive director on McCall's Fair Housing Act discrimination and retaliation claims. A disparate treatment claim requires a plaintiff to show that she "has been treated differently," *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1216 (11th Cir. 2008), "on the basis of race [in a manner] that affects the availability of housing," *Jackson v. Okaloosa County*, 21 F.3d 1531, 1542 (11th Cir. 1994). Disparate treatment

may be shown through either direct evidence or circumstantial evidence that satisfies the *McDonnell Douglas* burden shifting test. *See Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1539 (11th Cir. 1988); *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). And for a retaliation claim, a plaintiff must submit evidence that (1) she engaged in a protected activity, (2) the defendant committed an adverse act against her, and (3) there is a causal link between the protected activity and the adverse action. *Dixon v. Hallmark Cos., Inc.*, 627 F.3d 849, 858 (11th Cir. 2010). Finally, the Fair Housing Act supports vicarious liability, making the Housing Authority responsible for the acts of its agents or employees. *Meyer v. Holley*, 537 U.S. 280, 285 (2003). The Supreme Court has explained that an employer is liable for the acts of agents if the employer has the ability to control the agent and if the agent is acting within the scope of his or her authority. *Id.* at 288.

McCall's disparate treatment claim fails because she did not submit any evidence to show that the defendants did anything that would have violated the Fair Housing Act. *See Hallmark Devs., Inc. v. Fulton County*, 466 F.3d 1277, 1284 (11th Cir. 2006) ("In order to prevail on a claim under the [Fair Housing Act], a plaintiff must demonstrate 'unequal treatment on the basis of race that affects the availability of housing.'"). McCall's only evidence is the third-party inspector's comment that her stove was greasy and the derogatory comments by the maintenance worker. But she does not explain how these comments by a third-party inspector and a maintenance worker of a private apartment complex constitute

discrimination on the basis of race by the Housing Authority and its executive director. The summary judgment evidence shows that the Housing Authority merely contracted with a third-party company and it had no control over which inspectors that company used or what they said. The maintenance worker was employed by the independently owned apartment complex. The inspector and maintenance worker were not the agents of, and their comments are not attributable to, the Housing Authority. *See Meyer*, 537 U.S. at 288.

As to McCall's retaliation claim, the district court correctly entered summary judgment because McCall did not identify any adverse action taken against her by the Housing Authority or its executive director. *See Dixon*, 627 F.3d at 858. While the Housing Authority threatened to remove her from the program if she did not attend the meetings to discuss improving the cleanliness of her apartment, it never did anything. While McCall claims that she was prevented from "porting out," she concedes that she never submitted the mandatory written request to do so. Without an adverse action by the Housing Authority, her retaliation claim fails too.

**AFFIRMED.**