[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14929
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-00566-WS-N


DRAPER FRANK WOODYARD,

Plaintiff-Appellant,

versus

ALABAMA DEPARTMENT OF CORRECTIONS, et al.,

Defendants,

DAVID LEGGETT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(June 30, 2017)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Draper Woodyard, an inmate in the Alabama prison system, alleges that David Leggett, a corrections officer at the prison where he was incarcerated, acted with deliberate indifference by failing both to prevent another inmate from assaulting him and to respond appropriately to that assault. The district court granted summary judgment to Leggett. Woodyard appeals.

I.

"We relate the facts — as we must at this stage of the litigation — in the light most favorable to" Woodyard. Goodman v. Kimbrough, 718 F.3d 1325, 1329 (11th Cir. 2013).

A.

In July 2012 Woodyard approached Leggett, who was on duty in Woodyard's prison dormitory, to report that another inmate, Lawrence Anderson, had threatened him. According to Woodyard's deposition, Anderson wanted Woodyard to give him some goods, which pass for money in prison. Woodyard refused, at which point Anderson became angry, they shoved each other, and Anderson threatened to stab Woodyard that night. It is unclear whether Woodyard told Leggett that Anderson shoved him or the timeframe for the planned attack.

Leggett brushed off the threat, saying that it was probably just the alcohol

2

talking.[1]  Woodyard asked for permission to go and report the threat to the shift supervisor, but Leggett refused to allow him to do so, saying that Woodyard had to "wait until the next movement call."  Leggett also refused to call a supervisor.  Woodyard returned to his bed and, because his medication made him drowsy, fell asleep.[2]

Not long afterwards, Anderson walked to Woodyard's bed and began stabbing Woodyard while he was asleep.[3]  Woodyard woke up and the two men began to struggle, tumbling over several beds.  Woodyard called out to Leggett for help.  He was stabbed repeatedly in the hands, chest, and fingers.

According to Woodyard's deposition, the assault seemed to last around five minutes and he called out to Leggett for help, but received no immediate

---

[1] As the district court noted:  "Left unexplained is why the prison so generously tolerated known, repetitive prisoner drunkenness, but that is not an issue raised by the plaintiff."

[2] Another inmate testified in a deposition that Woodyard did not go to sleep, but instead warily watched Anderson until the assault began.  Which version of events is more beneficial to Woodyard's case is difficult to say, but we credit Woodyard's version.

[3] With his opposition to the defendants' first motion for summary judgment, Woodyard submitted an affidavit from Anderson.  In that affidavit, Anderson claimed that just before the assault he walked right by Leggett with a knife visible and that "the officer saw the knife and looked the other way."  Although this affidavit is hearsay and would not be admissible for the truth of its contents at trial, see Fed. R. Evid. 802, we would normally consider it at the summary judgment stage because it would indicate what the affiant would testify to at trial, see Fed. R. Civ. P. 56(c)(2) & (4).

In this case, however, Anderson testified at his later deposition that his affidavit was untrue and that Leggett did not see the knife before the assault.  As a result, our usual assumption that an affidavit forecasts the affiant's trial testimony and for that reason may be considered at the summary judgment stage does not hold.  Without that assumption, the affidavit is only inadmissible hearsay.  And "[e]vidence inadmissible at trial cannot be used to avoid summary judgment."  Lebron v. Sec'y, Fla. Dep't of Children & Families, 772 F.3d 1353, 1360 (2014).

3

assistance. Leggett testified during his deposition that he called for backup upon noticing the fight and backup arrived within ten to fifteen seconds of his call for assistance.

B.

Woodyard, acting pro se, filed a lawsuit against Leggett and several other defendants, claiming that his rights had been violated in a number of ways. Among the claims he raised was one that Leggett had acted with deliberate indifference in violation of his Eighth and Fourteenth Amendment rights by failing to (1) prevent Anderson from assaulting him and (2) adequately protect him once the assault began.

The defendants filed an answer and special report, to which Woodyard responded. The magistrate judge construed those filings as a motion for summary judgment and a response in opposition. She recommended that the district court grant the motion for summary judgment as to all of Woodyard's claims except his deliberate indifference claims against Leggett in his individual capacity. The district court adopted that recommendation and, in response to a request from Woodyard, appointed counsel to represent Woodyard on his deliberate indifference claims against Leggett.[4]

_____

[4] In his briefs to this Court, Woodyard does not challenge the district court's decision to grant summary judgment to the defendants on all of his other claims. As a result, he has abandoned any argument about those claims. United States v. Willis, 649 F.3d 1248, 1254 (11th

4

After additional discovery was taken, Leggett again moved for summary judgment. Woodyard, now represented by counsel, filed a brief in opposition that addressed only his claim that Leggett failed to prevent the assault — omitting any discussion of Woodyard's allegation that Leggett failed to adequately protect him once the assault began. The district court granted summary judgment to Leggett on both claims. It did not consider any of the arguments Woodyard made in his original pro se brief in opposition to the first motion for summary judgment or the evidence he submitted in support of that opposition. Because it concluded that no constitutional violation occurred, the district court did not address whether Leggett was entitled to qualified immunity.

Woodyard, once again proceeding pro se, appeals.

II.

We review de novo a district court's decision to grant a motion for summary judgment, Harrison v. Culliver, 746 F.3d 1288, 1297 (11th Cir. 2014), viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in his favor, Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014). Summary judgment is only "appropriate where there is no genuine issue as to any material fact and the moving party is entitled to

Cir. 2011) ("A party seeking to raise a claim or issue on appeal must plainly and prominently so indicate . . . . Where a party fails to abide by this simple requirement, he has waived his right to have the court consider that argument.") (quotation marks omitted).

5

judgment as a matter of law." Hinkle v. Midland Credit Mgmt., 827 F.3d 1295, 1300 (11th Cir. 2016).

## III.

Leggett asserts — as an alternative ground for affirming the district court's grant of summary judgment on the merits of Woodyard's claims — that he is entitled to qualified immunity. An officer is entitled to qualified immunity from liability for actions taken in the course of his discretionary functions unless a plaintiff can show (1) that the officer violated the plaintiff's constitutional or statutory rights and (2) that those rights were "clearly established" at the time of the violation. Caldwell, 748 F.3d at 1098. Woodyard does not argue that Leggett was acting outside his discretionary functions as a corrections officer. So the burden shifts to Woodyard to demonstrate a genuine dispute of material fact as to whether Leggett is entitled to qualified immunity. Id.

Because Woodyard must establish a genuine issue of material fact as to whether Leggett violated his constitutional rights before he can possibly overcome the officer's qualified immunity defense, we address the district court's conclusion that Woodyard's Eighth and Fourteenth Amendment rights were not violated.

## A.

We first consider Woodyard's claim that Leggett acted with deliberate indifference in violation of the Eighth and Fourteenth Amendments by failing to

6

prevent Anderson from assaulting Woodyard after being made aware of Anderson's threat.  The district court concluded that Woodyard did not present sufficient evidence to create a genuine issue of material fact as to whether his constitutional rights were violated.  But we need not decide whether it was correct, because "[w]e may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below."  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).  In this case, even if Leggett's failure to prevent Anderson from assaulting Woodyard did amount to a constitutional violation, that violation was not clearly established by binding Supreme Court, Eleventh Circuit, or Alabama Supreme Court precedent at the time Woodyard was assaulted.

A right is clearly established if "at the time of the incident, the preexisting law dictates, that is, truly compel[s], the conclusion for all reasonable, similarly situated public officials that what [the officer] was doing violated [the plaintiff's] federal rights in the circumstances."  Marsh v. Butler Cty., 268 F.3d 1014, 1030–31 (11th Cir. 2001) (en banc) (quotation marks omitted) (first alteration in original).  Binding precedent has undoubtedly established that prison officials must take reasonable steps "to protect prisoners from violence inflicted upon them by other prisoners."  Harrison, 746 F.3d at 1298.

In all but the most obvious cases, however, such a "highly general" standard

is not enough to clearly establish the unconstitutionality of an officials' conduct.

See Marsh, 268 F.3d at 1031–32 & n.9.  Instead, a plaintiff must be able to point to

a binding, "materially similar" precedent recognizing the violation.  Id. at 1032.

We have explained that:

> For qualified immunity purposes, a preexisting precedent is materially similar to the circumstances facing an official when the specific circumstances facing the official are enough like the facts in the precedent that no reasonable, similarly-situated official could believe that the factual differences between the precedent and the circumstances facing the official might make a difference to the conclusion about whether the official's conduct was lawful or unlawful.

Id.  That is not the case here.

The plaintiff in a deliberate indifference case must show (1) that "a

substantial risk of serious harm" existed, (2) that the defendant acted with

"deliberate indifference" to that risk, and (3) a causal connection between that

indifference and his injury.  Caldwell, 748 F.3d at 1100.  An official acts with

deliberate indifference to a risk where he (1) had subjective knowledge of the risk,

(2) disregarded it, and (3) did so "by conduct that is more than gross negligence."

Goodman, 718 F.3d at 1332.

Some of our sister circuits' decisions suggest that Woodyard's report to

Leggett might be enough to show that Leggett had subjective knowledge of the risk

Woodyard faced.  See, e.g., Gevas v. McLughlin, 798 F.3d 475, 481 (7th Cir.

2015) ("[A] complaint that identifies a specific, credible, and imminent risk of

8

serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk."). But in determining whether a particular constitutional violation is clearly established, we look to our own binding precedent, the binding precedent of the Supreme Court, and the binding precedent of the "highest court in the state where the action is filed." Merricks v. Adkisson, 785 F.3d 553, 560 (11th Cir. 2015). And no decision from the United States Supreme Court, this Court, or the Alabama Supreme Court clearly established that the information available to Leggett was sufficient to apprise him of the risk Woodyard faced and require him to take preventative action.

According to his deposition testimony, Woodyard told Leggett before the assault that Anderson was drunk, had threatened to stab him, and went "nuttio" when Woodyard declined to provide him with more goods. Woodyard told the officer that he believed Anderson was "sincere" and that he "need[ed] to go [to the supervisor's office] now." In his sworn complaint, Woodyard alleges he also said that he feared life-threatening violence. The record indicates that Anderson and Woodyard had no history of altercations. And one inmate testified in a deposition that, on the whole, the prisoners in the dorm got along fairly well.

Our decision in Rodriguez v. Secretary for the Department of Corrections, 508 F.3d 611 (11th Cir. 2007), has some factual similarities to this case. There an

9

inmate told several guards that he had been threatened by his former gang and that he feared they would assault him when he was released into the general population. Id. at 614–616.  He was released anyway and a few hours later a gang enforcer stabbed him.  Id. at 616.  We held that — because the inmate had relayed the threats to several prison officials — the inmate had shown that those officials had subjective knowledge of the risk of assault he faced.  Id. at 618–22.

In Rodriguez the officers were aware of both the threats made against the inmate and the gang-related nature of those threats.  The assault in this case was not gang-related.  All Leggett was aware of was Anderson's threats, Anderson's drunkenness, and the fact that Anderson and Woodyard had an argument a few minutes before Woodyard spoke to Leggett.  A reasonable officer could conclude that, because of the violence associated with gangs and the lack of gang involvement in the dispute between Anderson and Leggett, this situation was different from the one the officers in Rodriguez faced.  A gang's threat to kill someone for leaving the gang (or really for almost any other reason) could reasonably be considered more credible than a drunk inmate's threat to kill someone because they didn't hand over "goods."  That distinction is enough to prevent Rodriguez from clearly establishing that Leggett's conduct was unconstitutional.  See Marsh, 268 F.3d at 1032.  Even if Leggett was aware that Anderson had said he would stab Woodyard "that night" and had shoved him, we

10

are not persuaded that <u>Rodriguez</u> clearly established that Leggett's response to the situation amounted to deliberate indifference.

As the Eighth Circuit has recognized, "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." <u>Prater v. Dahm</u>, 89 F.3d 538, 542 (8th Cir. 1996).  Until binding precedent clarifies the circumstances in which threats between inmates <u>are</u> sufficient to allow the jury to impute knowledge of such risks to an officer, we cannot say that in the circumstances of this case a refusal to act on a threat (or threats accompanied by drunkenness) amounted to a clearly established constitutional violation.  For those reasons, the district court did not err by granting summary judgment to Leggett on Woodyard's failure to prevent claim.

## B.

We next consider Woodyard's claim that Leggett acted with deliberate indifference when he failed to immediately intervene to stop Anderson from assaulting Woodyard.  For the reasons that follow, we conclude that the district court erred when it granted summary judgment to Leggett on this claim.

## 1.

The district court believed that Woodyard had failed to establish a genuine issue of material fact as to whether Leggett had violated his constitutional rights by failing to adequately respond to Anderson's assault.   Admittedly, Woodyard did

not address this claim in his response to Leggett's second motion for summary judgment. But the district court still considered and addressed the claim and it is raised in Woodyard's brief on appeal, so we will also address it.

As we have explained, to survive summary judgment on his failure to protect claim, Woodyard bears the burden of showing (1) that "a substantial risk of serious harm" existed, (2) that Leggett acted with "deliberate indifference" to that risk, and (3) a causal connection between that indifference and his injury. Caldwell, 748 F.3d at 1100. We think that Woodyard has established a genuine issue of material fact about this claim.

As to the first element, a substantial risk of serious harm existed once the assault began: Woodyard was being assaulted with a knife by a fellow inmate. The second element, deliberate indifference, is established only where a plaintiff demonstrates that the defendant (1) had subjective knowledge of the risk, (2) disregarded it, and (3) did so "by conduct that is more than gross negligence." Goodman, 718 F.3d at 1332. Woodyard has created a genuine issue of material fact as to whether he has met that standard and established the second element.

First, a jury could conclude that Leggett was subjectively aware of the risk Woodyard faced. The depositions before the district court established that Leggett was between seven and twenty feet from the fight when it started, that Woodyard called for help, that there was a lot of blood, and that the men "tussled" over

12

several beds.  That would presumably have drawn Leggett's attention.  Indeed, Leggett himself testified in his deposition that he heard a yell and saw inmates tumble over a bed, which is consistent with Woodyard's version of events.

Likewise, a jury could conclude that Leggett disregarded that risk.  Although the summary judgment record does not reveal exactly how long it took him to notice the assault once it began, reasonable jurors could conclude that — given his proximity to the fight, the amount of blood spilled, the yelling, and the commotion caused by the men tumbling over beds — Leggett noticed the fight soon after it began.  Based on Woodyard's deposition testimony that the assault lasted around five minutes and Leggett's deposition testimony that help arrived within ten to fifteen seconds of his eventual call for assistance, a jury could also infer that Leggett did not immediately call for backup.  Instead, reasonable jurors could infer that for some time Leggett merely watched the assault happen or ignored it.[5]

And jurors could also reasonably conclude that failing to take immediate action while an inmate was being assaulted amounted to more than gross negligence.  Though Leggett was not required to leap into the fray alone to save Woodyard, he could have called for assistance right away instead of waiting for

---

[5] Given the contradictory evidence on several of these points in the record, reasonable jurors might also reach a different conclusion at trial, but at this point we are required to draw all inferences in Woodyard's favor.  See Swint v. City of Wadley, 51 F.3d 988, 992 (11th Cir. 1995) ("[W]hat we state as 'facts' in this opinion for the purposes of reviewing the rulings on the summary judgment motions may not be the actual facts.  They are, however, the facts for present purposes . . . .").

five minutes to do so.

Finally, Leggett's alleged delay in acting allowed Anderson's assault to continue unabated, satisfying the causation element of a deliberate indifference claim. All of those facts, taken together, are sufficient to create a genuine dispute of material fact as to whether Leggett violated Woodyard's constitutional rights.

2.

Because we conclude that a reasonable jury could find that Leggett violated Woodyard's Eighth and Fourteenth Amendment rights by failing to adequately act once Anderson began his assault, we must determine whether prior case law clearly established that Leggett's conduct was unconstitutional. It did.

As we have already said, our precedents have made clear, repeatedly, that the Constitution requires that prison officials take reasonable measures to protect the safety of the inmates. See, e.g., Harrison, 746 F.3d at 1298. Any reasonable officer should have known that he could not, in keeping with that standard, delay for five minutes taking any action while one inmate assaulted another one. See United States v. Lanier, 520 U.S. 259, 271, 117 S. Ct. 1219, 1227 (1997) ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.") (quotation marks omitted). For these reasons, viewing the evidence in the light most favorable to Woodyard, Leggett is not entitled to summary judgment on Woodyard's failure to protect

14

claim.

## IV.

The judgment of the district court as to Woodyard's failure to prevent claim is **AFFIRMED**.  The judgment of the district court as to Woodyard's failure to protect claim is **REVERSED** and the case is **REMANDED** to the district court for further proceedings consistent with this opinion.