[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14278

_____

JON L. JOHNSON,

Plaintiff-Appellant,

*versus*

K. LANG,
Sgt., In His Individual and Official Capacity,
JEFFREY DUNN,
Commissioner, In His Individual and Official
Capacity,
GRANTT CULLIVER,
Deputy Commissioner of Ala. Dept. of Corrections,
In His Individual and Official Capacity,
CYNTHIA STEWART,
Warden, In Her Individual and Official Capacity,
WARDEN RAYBON,

In His Individual and Official Capacity,
NURSE WALL,
In Her Individual and Official Capacity,
NURSE YOUNG,
In Her Individual and Official Capacity,
NURSE TAYLOR,
In Her Individual and Official Capacity,
NURSE GRAY,
In Her Individual and Official Capacity,
D. BROWN,
Lieutenant, In His Individual and Official Capacity,
WARDEN MITCHELL,
In His Individual and Official Capacity, et al.,

                                        Defendants-Appellees.

                    _____

            Appeal from the United States District Court
                for the Southern District of Alabama
                D.C. Docket No. 1:18-cv-00349-WS-N

                    _____

Before JILL PRYOR, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

This case arises out of two prisoners' violent attack on fellow prisoner Jon Johnson at Alabama's Holman Correctional Facility. After the attack, Johnson alleged that prison officials placed him in cells that were woefully inadequate to provide basic living conditions. He also alleged that sometime later he was attacked again by another prisoner when prison officials returned him to the facility's general population.

Acting *pro se*, Johnson brought a 42 U.S.C. § 1983 action against several Alabama Department of Corrections ("ADOC") officials, asserting Eighth Amendment claims for failing to provide adequate security and living conditions. He also alleged that an ADOC official named Kevin Lang witnessed a portion of the first attack on him but did not intervene. The district court granted summary judgment to all defendants.

On appeal, Johnson argues that summary judgment was improper because the district court disregarded his evidence of the generalized risk of prisoner violence at Holman and of the inadequate living conditions in which he was held there. He also argues that the district court failed to consider the evidence in the light most favorable to him when it examined his claim against Lang. After careful consideration, and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

Johnson's § 1983 claims are based on the defendants' failure to protect him from two prison attacks and to provide him with

adequate living conditions. We begin by describing the facts that make up Johnson's claims and then turn to the procedural history of this case.

## A.    Factual Background[1]

According to his sworn complaint, the first attack on Johnson took place in May 2018 while he was incarcerated at Holman Correctional Facility, an Alabama state prison.[2] Security at Holman was "bad." Doc. 1 at 9.[3] "[S]tabbings happen[ed] at Holman at a very high rate." *Id.* On the night of the attack, the "B-NIGHTS" security shift team was on duty. Doc. 37-10 at 1. Lieutenant Deveron Brown acted as the shift commander, and Lang was the assistant shift commander. The duty roster assigned both Brown and Lang to "Population." *Id.*

At some point during the B-NIGHTS security shift, two prisoners attacked Johnson in cellblock B, in the general population,

---

[1] Johnson seeks to expand the record on appeal by citing to documents from the Alabama Department of Corrections and the Department of Justice that were not presented to the district court. He requests that we take judicial notice of information in these documents. But "[i]n deciding issues on appeal we consider only evidence that was part of the record before the district court." *Selman v. Cobb Cnty. Sch. Dist.*, 449 F.3d 1320, 1332 (11th Cir. 2006). We therefore decline to take judicial notice of Johnson's extra-record evidence.

[2] We "credit the 'specific facts' pled in [Johnson's] sworn complaint when considering his opposition to summary judgment." *Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020).

[3] "Doc." numbers refer to district court docket entries.

trying to take Johnson's contraband cellphone. The attackers stabbed Johnson dozens of times. According to Johnson, Lang "stood outside of cellblock B and watch[ed] the two inmates assault" him. Doc. 1 at 5. After the attack, a prison guard saw Johnson walking toward cellblock B's gate while bleeding from his chest. The guard called for assistance. ADOC officials took Johnson to the prison health care unit. They then transported him to a nearby hospital that treated his injuries.

Once he returned from the hospital, prison officials placed Johnson in a hospital holding cell with eight other prisoners. Johnson "was given a mattress with no bed sheets or blanket." *Id.* at 8. He had access to a toilet but not to a sink, shower, or any other source of running water. The hospital holding cell was "very hot" and lacked windows or an air conditioner. *Id.*

After 12 days in the hospital holding cell, prison officials moved Johnson to a single-occupancy cell in the segregation unit. The cell had "no lights" or "venti[l]ation," but "a []hole in the [cell's] window" provided air. *Id.* The cell's toilet was broken, and it leaked. The sink also leaked and provided no hot water. The cell's floor was dirty. According to Johnson, he spoke with "the seg[regation] board for about three weeks straight, [and] they finally sent [him] back into population on June 20, 2018." *Id.*

On the day Johnson returned to the general population, another prisoner attacked him and stabbed him three times. Lang was on duty during this attack. Prison officials moved Johnson back into

the hospital holding cell, where he experienced the same miserable living conditions as he had previously.

## B.    Procedural History

Acting *pro se*, Johnson filed a § 1983 action, suing several ADOC employees for violating his Eighth Amendment rights. He asserted claims against ADOC Commissioner Jeffrey Dunn, Associate Commissioner Grantt Culliver, Warden Terry Raybon, Warden Philip Mitchell, Warden Cynthia Stewart, Brown, and Lang.[4] Johnson alleged that these defendants provided insufficient security to protect him while he was incarcerated. He also alleged that Lang failed to intervene during his first attack. Additionally, he asserted that Culliver, Stewart, Raybon, and Mitchell furnished him with inadequate living conditions.

In response to his sworn complaint, the defendants filed a special report alongside several affidavits. In Lang's affidavit, he stated that he "was providing security in segregation" during Johnson's first attack and thus was not present in general population cellblock B, where the attack occurred. Doc. 37-1 at 1. Two affidavits from ADOC personnel described Holman's living conditions as "adequate and sanitary." Doc. 37-5 at 2; doc. 37-6 at. 2. A

---

[4] Johnson also sued several nurses who provided him with medical services after his stabbings, and he sought a temporary restraining order to prevent a retaliatory transfer to another prison. The district court granted summary judgment to these nurse defendants; Johnson does not challenge that decision on appeal. The district court also denied his motion for a temporary restraining order, which Johnson does not appeal.

magistrate judge converted the defendants' special report to a motion for summary judgment. Johnson filed a response which restated the allegations from his complaint.

The district court granted summary judgment to the defendants on Johnson's Eighth Amendment claims. The district court noted that for Johnson to succeed on these claims, he must provide evidence that the defendants were deliberately indifferent to a substantial risk of serious harm. The district court explained that Johnson could not show deliberate indifference for his failure-to-protect claim because he never informed any prison personnel about his security concerns. As to Johnson's failure-to-intervene claim against Lang, the district court credited Lang's affidavit testimony that he was not in or near cellblock B at the time of the first attack. The court then turned to Johnson's inadequate-living-conditions claim. It concluded that Johnson did not "offer substantial evidence that . . . he was deprived of basic human needs." Doc. 52 at 18.

The district court entered final judgment in favor of the defendants. Johnson timely appealed to this Court. On our own motion, we appointed counsel to represent Johnson on appeal.

## II.    STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the evidence, the court must draw all reasonable inferences in favor of the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

## III.    DISCUSSION

Johnson contends that the district court erred by granting summary judgment on his Eighth Amendment claims. Specifically, as to his failure-to-protect claim, he argues that the defendants were deliberately indifferent to the general level of violence at Holman, which created a substantial risk of serious harm. Johnson also argues that the district court disregarded genuine disputes of material fact related to his failure-to-intervene claim against Lang and his failure-to-provide-adequate-living-conditions claim. After setting out the standard for Eighth Amendment deliberate indifference claims, we address each claim in turn.

To make out an Eighth Amendment claim that survives summary judgment, a plaintiff needs to "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). To meet the substantial-risk-of-serious-harm element, a plaintiff must provide evidence of "conditions that were extreme and posed an

unreasonable risk of serious injury to his future health or safety." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016).

## A.    Failure-to-Protect Claim

Johnson argues that the defendants were deliberately indifferent to the substantial risk of serious harm caused by the generalized threat of prisoner-on-prisoner violence at Holman. Extreme levels of prisoner-on-prisoner violence may create a substantial risk of serious harm. *Purcell ex rel. Estate of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1320 (11th Cir. 2005). But "occasional, isolated attacks by one prisoner on another" are insufficient to establish this element. *Id.* (internal quotation marks omitted). Prison violence must be "the norm or something close to it." *Id.* at 1322. We conclude that Johnson failed to come forward with evidence sufficient to demonstrate that prisoner violence at Holman presented a substantial risk of serious harm.

Johnson's evidence concerning the level of violence at Holman consisted of a single statement from his sworn complaint, "that stabbings happen at Holman at a very high rate."[5] Doc. 1 at 9. Our precedent makes clear, however, that we require more to show that a generalized possibility of violence constitutes a

---

[5] Johnson described the violence at Holman more extensively in his filing, "Plaintiff's Response to the Defendants' Answer and Special Report." Doc. 45. The new factual allegations in this filing are unsworn and have "no probative value." *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003). Thus, they cannot be considered evidence to defeat a motion for summary judgment. *Id.*

substantial risk of serious harm. For example, in *Marbury v. Warden*, a prisoner appealed a district court's decision to grant summary judgment on his Eighth Amendment claims to various prison officials. *Marbury v. Warden*, 936 F.3d 1227, 1231 (11th Cir. 2019). In his sworn complaint, the prisoner stated that he witnessed 15 stabbings in the prison before another prisoner stabbed him. *Id.* On appeal, he argued that the prison officials had been deliberately indifferent to a substantial risk of serious harm created by generalized prison violence as evidenced by the previous 15 stabbings. *Id.* at 1233. We rejected this argument, explaining that the prisoner's statement about the 15 stabbings lacked context because he failed to provide evidence about the size of the prison, where the attacks took place, or the timeframe of the attacks. *Id.* at 1234. We concluded that the prisoner's sworn allegations supported the inference that he "faced some generalized risk of attack[,]" but "such evidence d[id] not support the conclusion that serious inmate-on-inmate violence was so pervasive that it constitute[d] a substantial risk of serious harm to which defendants were deliberately indifferent." *Id.*

Similarly, in *Harrison v. Culliver*, a prisoner brought an Eighth Amendment claim against prison officials after another prisoner cut his throat. *Harrison v. Culliver*, 746 F.3d 1288, 1292 (11th Cir. 2014). On appeal, we affirmed the district court's decision to grant summary judgment to the prison officials. *Id.* at 1302. The evidence showed that 33 incidents involving weapons occurred during the relevant time period among the prison's more than 800

occupants. *Id.* at 1300. Only four incidents took place in the area where the prisoner was attacked. *Id.* We held that this "evidence of inmate-on-inmate assault involving weapons . . . d[id] not indicate that inmates were exposed to something even approaching the constant threat of violence." *Id.* at 1299–300 (internal quotation marks omitted).

Here, Johnson's sole and very general statement about the level of violence at Holman was insufficient to meet the substantial-risk-of-serious-harm standard. Doc. 1 at 9. For one thing, Johnson submitted no evidence concerning the level of violence in the cellblocks where he was stabbed. In *Harrison*, we specifically examined the level of violence at the location where the attack occurred. *Harrison*, 746 F.3d at 1300. For another, he failed to show the timeframe of the other attacks or the size of the prison population at Holman over that timeframe—other information we considered important in *Marbury* and *Harrison*. Thus, Johnson, like the plaintiff in *Marbury*, lacked any evidence "that would place [his] statement [about the violence at Holman] in context." *Marbury*, 936 F.3d at 1234.

Because Johnson has provided considerably less evidence than the unsuccessful plaintiffs in *Marbury* and *Harrison*, we conclude that he failed to show that the violence at Holman constituted a substantial risk of serious harm. We therefore affirm the district court's grant of summary judgment to all defendants on Johnson's failure-to-protect claim based on generalized violence at the prison.

## B.    Failure-to-Intervene Claim

Johnson claims that Lang violated his Eighth Amendment rights by "failing to intervene in the May 20 attack." Appellant Br. at 32. He argues on appeal that the district court erred by crediting Lang's statement that he did not witness the first stabbing over Johnson's statement that he did. Johnson also contends that the evidence, viewed in the light most favorable to him, shows that Lang was deliberately indifferent to his attack.

At the outset, Johnson is correct that the district court erred by accepting Lang's affidavit testimony where it conflicted with Johnson's sworn complaint. According to Johnson's sworn complaint, Lang "stood outside of cellblock B and watch[ed] the two inmates assault" him. Doc. 1 at 5. This account directly conflicted with the statement in Lang's affidavit that he was providing security in the segregation unit when the attack on Johnson occurred. Lang's affidavit also conflicted with the duty-post log, which assigned him to "Population," not segregation.[6] Doc. 37-10 at 1. "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). The district court inappropriately weighed the evidence by crediting Lang's version of events over Johnson's.

---

[6] The duty-post log also indicated that Lang supervised a bed count from 9:48 pm to 10:18 pm, but it did not indicate where the bed count occurred.

19-14278                Opinion of the Court                13

Despite the district court's error, we nevertheless affirm the grant of summary judgment to Lang. Even viewing the evidence in the light most favorable to Johnson, he has failed to create a genuine issue of material fact that Lang was deliberately indifferent to the danger Johnson faced during the first attack.

"Deliberate indifference has two components: one subjective and one objective." *Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020) (internal quotation marks omitted). A "plaintiff must show both that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm and that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner." *Brown v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016) (internal quotation marks omitted and alterations in original). In arguing that he can establish deliberate indifference, Johnson relies on two unpublished cases, *Johnson v. Boyd*, 701 F. App'x 841 (11th Cir. 2017), and *Woodyard v. Alabama Department of Corrections*, 700 F. App'x 927 (11th Cir. 2017).[7] Of course, "unpublished opinions are not binding on this court," but they may "be cited as persuasive authority." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004) (internal quotation marks omitted). We see the

---

[7] Johnson also relies on our unpublished opinion in *Murphy v. Turpin*, 159 F. App'x 945 (11th Cir. 2005). We decided that case under the now overruled "no set of facts" standard for evaluating motions to dismiss. *Murphy*, 159 F. App'x at 947. Because it applied an outdated standard, we do not consider its analysis persuasive.

facts in *Boyd* and *Woodyard* as materially different from Johnson's case; thus, we find these cases unpersuasive here.

In *Boyd*, we vacated the dismissal of a prisoner's Eighth Amendment failure-to-intervene claim. *Boyd*, 701 F. App'x at 847. The prisoner alleged that another prisoner attacked him while "officers stood outside the cell watching the incident." *Id.* at 846. His complaint further stated that "at least ten minutes elapsed from the time the officers arrived at the cell and when they entered to intervene." *Id.* We concluded that together these facts were sufficient to plead deliberate indifference. *Id.* at 847. Although *Boyd* was a motion-to-dismiss rather than a summary-judgment case, Johnson cites it because he contends the facts alleged there are analogous to the facts in evidence in his case.

In *Woodyard*, we reversed the grant of summary judgment to a prison guard on a failure-to-intervene claim. *Woodyard*, 700 F. App'x at 933. The prisoner submitted evidence that another prisoner attacked him with a knife for about five minutes while he called out to the nearby guard for help. *Id.* at 929–30. We explained that a jury could infer the guard knew about the fight soon after it began due to the prisoner's yelling. *Id.* at 934. Based on the prisoner's testimony that the fight lasted five minutes, we held, a jury could find that the guard acted with deliberate indifference by not calling for back up soon enough. *Id.*

Unlike the plaintiffs in *Boyd* and *Woodyard*, Johnson failed to say how much time elapsed while the prison guard witnessed his attack. As we explained in *Boyd*, "a significant amount of time

elaps[ing] between [a prisoner's] physical assault and the defendant[s'] intervention may demonstrate that the defendants were subjectively aware of the risk of substantial injury or responded to the risk in an objectively unreasonable way." *Boyd*, 701 F. App'x at 846. Johnson's sworn complaint contained no information about how long the attack lasted or how much of it Lang witnessed. Johnson therefore failed to provide the type of information that we previously suggested could be used to establish the subjective and objective components of deliberate indifference. This distinguishes Johnson's case from *Boyd* and *Woodyard* and renders them unpersuasive here. So, we affirm the district court's decision to grant summary judgment to Lang on Johnson's failure-to-intervene claim.[8]

## C.    Inadequate-Living-Conditions Claim

Johnson's third claim is that his living conditions in the hospital holding cell and segregation cell presented a substantial risk of serious harm. On appeal, he argues that the district court incorrectly granted summary judgment to defendants Culliver, Stewart, Raybon, and Mitchell on this claim. He maintains that the district court arrived at the opposite conclusion by inappropriately discounting his sworn statements about his living conditions. Even

---

[8] In his brief, Johnson also argues that Lang failed to intervene during the second attack on him, which occurred in June. This claim fails for the additional reason that Johnson's sworn complaint did not say that Lang witnessed the June attack, only that he was on duty somewhere in the prison.

assuming Johnson is correct, summary judgment was appropriate because he failed to come forward with evidence that the defendants were deliberately indifferent to his living conditions.

As with his other Eighth Amendment claims, Johnson must present evidence that the defendants were deliberately indifferent—this time, to the conditions in the hospital holding cell and the segregation cell. To establish the subjective component of deliberate indifference, Johnson must show that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that the defendants] also dr[ew] the inference." *Chandler v. Crosby*, 379 F.3d 1278, 1290 (11th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). He has failed to make that showing.

We find no evidence in the record indicating that Culliver, Stewart, Raybon, or Mitchell knew about the conditions in the hospital holding cell or the segregation cell. Johnson points to the statements in his sworn complaint that he saw "the seg[regation] board for about three weeks straight" while he was in the segregation cell. Doc. 1 at 8. The problem for Johnson is that the sworn complaint did not reveal what he said to the segregation board. The record is equally silent about whether these defendants were members of the segregation board or communicated with anyone on the segregation board. Without this information, Johnson cannot show that Culliver, Stewart, Raybon, and Mitchell had subjective knowledge of his living conditions in the hospital holding cell or the segregation cell. This gap in the evidence prevents Johnson from

establishing that these defendants were deliberately indifferent to his living conditions. We must therefore affirm the grant of summary judgment on Johnson's inadequate-living-conditions claim.

## IV.    CONCLUSION

We do not mean to minimize or condone the violent attacks or miserable living conditions that Johnson experienced at Holman Correctional Facility. But we are bound to faithfully apply the summary-judgment standard for Eighth Amendment claims in this circuit. After doing so, we must affirm the district court's judgment in favor of the defendants.

**AFFIRMED.**